# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:19 CV 473 MR WCM

| | | |
|---|---|---|
| TRACEY ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| ANDREW SAUL, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 12, 14), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be granted and the Commissioner's Motion for Summary Judgment be denied.

## I.    Procedural History

In February and March of 2014, Plaintiff Tracey Armstrong ("Plaintiff") filed applications for supplemental security income and disability insurance benefits. Transcript of Administrative Record ("AR"), pp. 353-360 & 361-362. Following denial of Plaintiff's claims on initial review and reconsideration, a hearing was held on September 23, 2015, in Charlotte, North Carolina, where

1

Plaintiff appeared and testified.  AR pp. 90-114.  Plaintiff was represented by counsel at the hearing.

On November 7, 2016, the Administrative Law Judge ("ALJ") issued an unfavorable decision.  AR pp. 183-208.  Thereafter, the Appeals Council remanded the case to the ALJ, and a second hearing was held on June 4, 2018.  AR pp. 209-211 & 54-86.  Plaintiff, again represented by counsel, appeared and testified.

On August 30, 2018, the ALJ issued another unfavorable decision.  AR pp. 23-53.  The Appeals Council denied Plaintiff's request for review of that decision.  AR pp. 13-20.  On September 23, 2019, Plaintiff timely filed the instant action.  Doc. 1.[1]  Accordingly, Plaintiff exhausted her administrative remedies and the ALJ's August 30, 2018 decision is the Commissioner's final decision for purposes of judicial review.  See 20 C.F.R. § 404.981.

## II.    The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1505; 416.905.  The regulations require the Commissioner to apply a five-step sequential

---

[1] By letter dated August 24, 2019, Plaintiff was granted a thirty (30) day extension of time to file a civil action.  AR pp. 1-3.

evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant throughout the first four steps of this five-step process to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant is able to perform other work, considering the claimant's RFC, age, education, and past work experience. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

## III. The ALJ's Decision

In his August 30, 2018 Decision, the ALJ found that Plaintiff had the severe impairments of "fibromyalgia, migraines, peripheral neuropathy, and depression." AR p. 29. The ALJ further found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to simple, routine, repetitive tasks in a low stress and low production work environment with occasional exposure to people. She requires a sit/stand option with the ability to alternate hourly. She cannot climb or work around heights or dangerous equipment. She cannot use her left foot to operate machinery. She can occasionally bend, stoop, crawl, crouch or balance.

> AR p. 31.

Utilizing this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but that Plaintiff could perform other work such that Plaintiff was not disabled from December 23, 2013 (the alleged disability onset date) through August 30, 2018 (the date of the ALJ's Decision). AR pp. 46-47.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applied the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Analysis

Plaintiff asserts six assignments of error: (1) the ALJ failed to evaluate the opinion of one of Plaintiff's treating physicians; (2) the ALJ failed to weigh the opinions of two other treating physicians appropriately; (3) the ALJ failed to analyze a disability determination purportedly made by the North Carolina Total Retirement Plan (the "Retirement Plan" or the "Plan"); (4) the ALJ improperly considered Plaintiff's symptoms and limitations stemming from her fibromyalgia when developing her RFC; (5) the ALJ failed to explain how Plaintiff can stay on task for an eight-hour workday considering her moderate limitations in concentration, persistence, or pace; and, (6) the ALJ failed to

resolve apparent conflicts between the representative occupations identified by the vocational expert ("VE") and job requirements as set forth in the Dictionary of Occupational Titles ("DOT").[2]

## A. Issues Associated with the Retirement Plan Determination

During the hearings on September 23, 2015 and June 4, 2018, Plaintiff testified that she had been approved for "disability retirement." AR pp. 97 & 62. In his August 30, 2018 Decision, the ALJ noted that Plaintiff "was approved for early retirement disability as of January 1, 2014." AR p. 31; see also AR p. 38 ("She reportedly retired on disability in December 2013."). However, other than three reports, each entitled "Medical Report for Disability Re-examination" ("Re-Examination Reports") AR pp. 833-844, the record does not contain documentation related to the Retirement Plan or the Plan's determination that Plaintiff qualified for disability retirement.

### 1. Plaintiff's Treating Physicians

The Re-Examination Reports were completed by three of Plaintiff's treating physicians – Dr. Thor Borresen (a neurologist), Dr. Eric Moser (a neurologist and pain management specialist), and Dr. Valencia Tellis (a general practitioner) – in August 2016 to help determine if Plaintiff was

---

[2] Plaintiff also contends that the ALJ made an "administrative error" in determining that Plaintiff's date last insured was December 31, 2017 rather than September 30, 2019. See Doc. 13, p. 4 & AR p. 28. However, Plaintiff recognizes that the date last insured "is not relevant to this appeal." Doc. 13, p. 4.

6

disabled for purposes of the Retirement Plan. AR pp. 833-843.[3] Plaintiff argues that the ALJ erred by failing to discuss the opinion of Dr. Moser, and additionally by failing to explain sufficiently the weight given to the opinions of Dr. Borresen and Dr. Tellis. In response, the Commissioner asserts that the ALJ's failure to discuss Dr. Moser's opinion was harmless error, and that the ALJ weighed the opinions of Dr. Borresen and Dr. Tellis appropriately.

The Social Security Regulations require an ALJ to consider all medical opinions of record, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); SSR 06-03p (The ALJ must "consider all of the available evidence in the individual's case record in every case.").

Generally, a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and is not inconsistent with other substantial evidence of record. See 20 C.F.R §§

---

[3] The Commissioner does not contest Plaintiff's assertion that these doctors should be considered treating physicians, and a review of the administrative record reveals that each physician provided treatment to Plaintiff over an extended period. See AR pp. AR pp. 749-93, 811-826, & 851-859, 862-874, 881-892, 894-907 (Mecklenburg Neurological Associates records reflecting treatment by Dr. Borresen and Dr. Moser); AR pp. 496-523, 525-543, 547-553, 629-633, 639-643, 652-695, 699-704, 716-748 (Union Family Practice records reflecting treatment by Dr. Tellis).

7

404.1527(d)(2), 416.927(d)(2); <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir.2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir.1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4); <u>see also</u> <u>Mastro</u>, 270 F.3d at 178 ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

Additionally, "[m]edical opinions that go to the ultimate vocational issue of ability to work invade the province of the Commissioner, who is ultimately charged with determining whether a claimant meets the statutory definition of disability." <u>Cramer v. Colvin</u>, No. 3:13-cv-414-MOC, 2014 WL 1365911, at *3 (W.D.N.C. April 7, 2014) (citing 20 C.F.R. § 416.927(d)). "As a matter of law, such opinions are not entitled to controlling weight or special significance under the regulations." <u>Id</u>. (citing 20 C.F.R. § 416.927(d)(1)).

An ALJ must always give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2P. Further,

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Id.

In this case, Dr. Borresen, Dr. Moser, and Dr. Tellis each asserted that Plaintiff was "permanently disabled" and could not perform any work. AR pp. 834, 837 & 841. Dr. Borresen provided the following explanation:

> Low back pain with radiating pain down bilateral legs to her feet. Pain varies in intensity and can be as high as 10/10 on the pain scale. She has recurrent headaches and can last all day. Because of the intensity of her pain, she is unable to work. She is unable to complete any normal work activities. She is unable to bend, lift, push, pull, climb or sit/stand for extended periods of time.
>
> AR p. 834.

Dr. Moser provided a similar explanation:

> Low back pain with radiating pain down bilateral legs to feet. Pain varies in intensity. Can be as high as 10/10 on pain scale. Intermittent headaches can last all day. B/C of the intensity of her pain she is unable to work. Unable to complete any normal work activities. Unable to bend, lift, push, pull, sit, stand, climb for extended periods of time.
>
> AR p. 837.

Finally, Dr. Tellis stated that Plaintiff suffered from "chronic pain syndrome and emotional depression," was "unable to tolerate stress of job," "was unable to work with others," and experienced "pain with sitting, standing, [and] walking." AR p. 841.

9

In his August 30, 2018 Decision, the ALJ did not reference Dr. Moser's opinion, and, with respect to the opinions of Dr. Borresen and Dr. Tellis, stated:

> I have considered these opinions but have not given [them] controlling weight, as they are not consistent with the overall evidence. The claimant's physical examinations have been essentially unremarkable. She has been noted to have some tenderness and an occasional flat affect; however, her examinations do not support the severity of these opinions. While I have not ignored the opinions of medical sources and have carefully considered the limitations in the residual functional capacity outlined above, I note that whether an individual is 'disabled' or 'unable to work' is a decision reserved to the Commissioner. (SSR 96-5p).

AR p. 44.

Portions of the Re-Examination Reports, such as that Plaintiff was "permanently disabled," could not perform any work, and could not complete "any normal work activities" are conclusions not entitled to special significance. See SSR 96-5p, 1996 WL 374183 (July 2, 1996) (providing examples of issues reserved to the Commissioner).

However, other portions of the Re-Examination Reports provide medical opinions regarding the nature and severity of Plaintiff's impairments. Specifically, both Dr. Borresen and Dr. Moser stated that Plaintiff experienced lower back pain with radiating pain down both legs to her feet that could be as high as 10/10 on a pain scale, intermittent headaches that could last all day, and that Plaintiff was unable to bend, lift, push, pull, sit, stand or climb "for

10

extended periods of time." AR pp. 834 & 837. Dr. Tellis stated that Plaintiff experienced chronic pain syndrome and emotional depression, and experienced pain with sitting, standing, and walking. AR p. 841. With respect to these portions of the Re-Examination Reports, the ALJ was required to provide "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p.

The ALJ, though, did not discuss Dr. Moser's opinion at all and declined to give "controlling weight" to the opinions of Dr. Borresen and Dr. Tellis, stating that these opinions were inconsistent "with the overall evidence" because Plaintiff's physical examinations were "essentially unremarkable." AR p. 44. The ALJ did not cite any specific evidence in the record to support that finding. Consequently, the ALJ failed "to provide good, specific reasons in [his] decision for the weight [he] ascribed to" the opinions. McCraw v. Berryhill, No. 1:16-cv-402-MR, 2018 WL 1308140, at * 4 (W.D.N.C. March 13, 2018) ("While the ALJ generally discussed the objective evidence of record, the ALJ made no attempt to specifically explain how [treating physician's] opinions are not 'fully supported' by any other findings in the record.") (citing Fox v. Colvin, 632 Fed. Appx. 750, 756 (4th Cir. 2015) (unpubl.) ("Such a cursory and conclusory analysis does not provide any reason, let alone a 'good reason[ ],' why the ALJ concluded that [the treating physician's] opinion was inconsistent with other medical findings."); see also Sanchez v. Berryhill, No.

3:17-cv-374-MR, 2018 WL 3870197, at * 7 (W.D.N.C. Aug. 14, 2018).[4] Accordingly, the undersigned will recommend remand in order to allow the ALJ to consider the opinions of Plaintiff's treating physicians more fully.

## 2.     The Retirement Plan Disability Decision

Plaintiff argues that the ALJ erred in failing to provide "persuasive, specific reasons" for his "implicit disagreement with North Carolina's findings." Doc 13, p. 13.   Plaintiff recognizes "the North Carolina decision is not in the SSA file," but argues that the ALJ should have obtained that decision "as part of his duty to develop a full and fair record" or, alternatively, that Plaintiff should "be permitted to add it to the record on remand." Doc. 13, pp. 13-14.   In response, the Commissioner asserts that because Plaintiff has not explained what the Retirement Plan's decision might say other than that she was deemed to be disabled – a fact of which the ALJ was aware – and because the ALJ analyzed the opinions upon which the Plan's decision was based, the ALJ was not required to obtain further evidence.   Doc. 15, pp. 8-9.

---

[4] The ALJ's statement that Plaintiff's physical examinations were "essentially unremarkable" also appears contrary to the ALJ's recitation of the medical records. AR p. 37 (noting that during a physical examination on March 9, 2015, Plaintiff had a limping gait, a left AFO, and "variable strength effort" in her left ankle); see also AR pp. 41-43 (discussing 2017 medical records reflecting that Plaintiff consistently exhibited multiple tender points, experienced numbness and paresthesia to her bilateral lower extremities, and numbness and tingling in her hands).

Case 3:19-cv-00473-MR-WCM   Document 17   Filed 07/06/20   Page 12 of 22

Although "[a] disability decision by another entity does not bind the SSA," the Fourth Circuit has held that "'the [prior] disability determination of a state administrative agency is entitled to consideration.'" Woods v. Berryhill, 888 F.3d 686, 691 (4th Cir. 2018) (citing DeLoatche v. Heckler, 715 F.2d 148, 150, n. 1 (4th Cir. 1983)). To the extent the Retirement Plan's decision was based solely on the opinions of Dr. Borresen, Dr. Moser, and Dr. Tellis, this assignment of error is closely connected to Plaintiff's arguments regarding the ALJ's consideration of her treating physicians' opinions. However, without the decision itself, it is impossible for this Court to determine that the treating physicians' opinions are the only relevant information related to that decision.

Also, while the ALJ noted that Plaintiff testified she "was approved for early retirement disability as of January 1, 2014," the ALJ did not discuss the Retirement Plan's determination of disability itself. Pursuant to the social security regulations, such a discussion was required. See SSR 06-03p, 2006 WL 2329939 (August 9, 2006) ("the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases...."); see also Taylor v. Colvin, No. 4:14-cv-81-FL, 2015 WL 4208773, at * 5 (E.D.N.C. June 16, 2015) (failure of ALJ to mention determination by

Disability Income Plan of North Carolina finding that Plaintiff was entitled to long-term disability required remand).[5]

With respect to the Commissioner's argument that it was Plaintiff's responsibility to submit evidence of the Retirement Plan's decision, district courts in this Circuit have recognized that an ALJ has a duty to "fully and fairly develop the record," including where the administrative record indicates a claimant has been determined to be disabled by another entity, but the decision itself is not included in the record. See Herrien v. Astrue, No. 2:11cv560, 2013 WL 1121361, at * 10 (E.D. Va. Feb. 21, 2013) (remanding where record was silent as to the weight, if any, given to disability determinations by the VA and Office of Personnel Management) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) ("This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."));

_____

[5] Without more information regarding the Retirement Plan's purpose and evaluation methodology, it is not possible to evaluate Plaintiff's assertion that the ALJ was required to give "persuasive, specific reasons" for failing to afford the Retirement Plan's decision substantial weight. See Bird v. Commissioner of Social Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012) & Woods, 888 F.3d at 692 (disability decisions by the Department of Veterans Affairs or the North Carolina Department of Health and Human Services are generally afforded substantial weight based on "the purpose and evaluation methodology" of those determinations). Regardless, the Retirement Plan's determination was, at the very least, "entitled to consideration." See Woods, 888 F.3d at 691; SSR 06-03p, 2006 WL 2329939.

Worthington v. Astrue, No. 7:11-cv-207-FL, 2012 WL 4026067, at * 4 (E.D.N.C. Sept. 12, 2012) ("While it appears that plaintiff, who was represented by counsel of record at the administrative hearing, failed to submit any notice or decision of disability from the issuing agency, the fact that she was receiving state disability was noted in the record, and after plaintiff testified that she was receiving state disability benefits, the ALJ should have further developed the record on this point to the extent necessary to evaluate this evidence as required by SSR 06–03p.").

The undersigned will therefore recommend remand based as well on the lack of discussion of the Retirement Plan's disability decision.

Though it is not necessary to reach Plaintiff's remaining assignments of error, for completeness of this Memorandum and Recommendation, a brief discussion of those issues follows.

### B. Plaintiff's RFC

Plaintiff argues that her RFC as determined by the ALJ is not supported by substantial evidence because the ALJ improperly disregarded Dr. Moser's opinion, failed to recognize that fibromyalgia "produces no objective evidence of severity," and should have afforded greater weight to the subjective reports of Plaintiff and her husband. Doc. 13, pp. 14-16. Because the undersigned finds that the ALJ did not consider the opinions of Plaintiff's treating physicians fully and did not consider the Retirement Plan's disability decision,

the undersigned also finds that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

### C. Ability to Stay on Task

The ALJ found that Plaintiff had moderate limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. AR p. 30. Plaintiff argues that despite her moderate impairment in maintaining concentration, persistence, or pace, the ALJ failed to explain how Plaintiff "can stay on task for an eight-hour day." Doc. 13, p. 16.

An ALJ that finds a plaintiff has moderate limitations in concentration, persistence, or pace is not automatically required to include a corresponding limitation in the RFC. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). Rather, under the Mascio standard, the ALJ has two (2) options. He may limit the RFC finding, making sure that it accounts adequately for the limitations, see e.g., Chesterfield v. Saul, 1:19-cv-90-MR, 2020 WL 249453, at * 3 (W.D.N.C. Jan. 15, 2020) (citing Davis v. Saul, No. 3:18-CV-00367-MR, 2019 WL 4233553, at *3 (W.D.N.C. Sept. 5, 2019) (Reidinger, J.) (citing Williams v. Berryhill, No. 1:16-CV-00064-MR, 2017 WL 927256, at *6 (W.D.N.C. Mar. 8, 2017) (Reidinger, J.))(finding that an RFC limited to simple, routine tasks or unskilled work in a low stress or non-production environment, without more, does not adequately account for moderate limitations in concentration,

16

persistence, and pace), or, in the alternative, he may explain the decision not to limit Plaintiff's RFC further. <u>Shinaberry</u>, 952 F.3d at 121 (explaining that <u>Mascio</u> did not impose a categorical rule requiring a specific RFC regarding concentration, persistence, or pace and stating that an ALJ could explain why such a limitation was not necessary); <u>Rivera v. Berryhill</u>, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

Here, the ALJ found Plaintiff had moderate limitations in concentration, persistence, or maintaining pace based on Plaintiff's self-report that she did word searches about "all day long," and could pay attention for a few hours but that she had problems completing tasks and concentrating. AR p. 30 (discussing AR pp. 406-407). When developing Plaintiff's RFC, the ALJ found the "suggested limitations and assessment" contained in a March 2014 psychological evaluation completed by Dr. Chad Ritterspach were "consistent with the claimant's residual functional capacity." AR p. 44 (discussing AR pp. 705-707). In that regard, Dr. Ritterspach had concluded that Plaintiff "appeared able to sustain attention to perform simple, repetitive tasks" and had an "adequate ability to relate to others including fellow workers and supervisors." <u>See</u> AR pp. 44 & 707. Dr. Ritterspach further noted that while Plaintiff's performance on a mental status exam suggested "no significant impairments in memory and attention, chronic pain [could] intermittently cause significant declines in performance." <u>Id</u>. The ALJ then limited Plaintiff

"simple, routine repetitive tasks in a low stress and low production work environment with occasional exposure to people." AR pp. 44 & 31.

Considering the ALJ's reliance on Dr. Ritterspach's opinion that Plaintiff "appeared able to sustain attention to perform simple, repetitive tasks," it appears that the ALJ considered Plaintiff's ability to stay on task and included an appropriate functional limitation in her RFC.

### D. Conflict Between the VE's Testimony and the DOT

In concluding that Plaintiff could perform other work, the ALJ relied on five representative occupations identified by the VE during September 23, 2015 hearing: (1) laundry folder; (2) inspector hand packager; (3) shipping and receiving clerk; (4) document preparer; and (5) check weigher. AR p. 47. Plaintiff argues that the ALJ failed to resolve apparent conflicts between these occupations and her RFC.

### 1. Temperament for Repetitive Work

Plaintiff asserts that the jobs of inspector hand packager and check weigher conflict with her RFC because both jobs require the temperament for repetitive work. See DICOT 559.687-074, 1991 WL 683797 (Inspector and Hand Packager, includes description of "[p]erforming REPETITIVE or short-cycle work"); DICOT 737.687-026, 1991 WL 680047 (Check Weigher, includes same description). However, based on the current record, the undersigned is not persuaded that there is an apparent conflict between an RFC limiting a

18

person to "low stress and low production work" and a job requiring repetitive work.

## 2.    Reasoning Levels of Representative Occupations

Plaintiff also contends that the jobs of shipping and receiving clerk, document preparer, laundry folder, and inspector hand packager – which require Level 3 or Level 2 reasoning ability – conflict with her RFC.[6]

In order to perform a job requiring Level 2 Reasoning, an individual must have the ability to "carry out detailed but uninvolved written or oral instructions."  Plaintiff argues that this requirement conflicts with Plaintiff's RFC limiting her to "simple, routine repetitive tasks in a low stress and low production work environment."  The undersigned disagrees.  See Lawrence v. Saul, 941 F.3d 140, (4th Cir. 2019) (finding no apparent conflict between Level 2 Reasoning requirement of ability to "carry out detailed but uninvolved

---

[6] "The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability."  Richardson v. Berryhill, 5:17-cv-173-RJC-DSC, 2019 WL 1354042 at * 3 (W.D.N.C. March 25, 2019). The occupations of laundry folder and inspector hand packager both require a Reasoning Level of 2, which is described as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."  See DICOT 369.687-018, 1991 WL 673072 (Folder); DICOT 559.687-074, 1991 WL 683797 (Inspector and Hand Packager).  The occupations of shipping and receiving weigher and document preparer both require a Reasoning Level of 3, which is described as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." See DICOT 222.387-074, 1991 WL 672108 (Shipping and Receiving Weigher); DICOT 249.597-018, 1991 WL 672349 (Document Preparer, Microfilming).

written or oral instructions" and RFC limiting claimant to "simple, routine, repetitive tasks."); <u>King v. Saul</u>, 787 Fed. Appx. 170 (2019), 2019 WL 6713598, at * 1 (4th Cir. 2019) (unpubl.) ("We find that *Lawrence* is controlling in this case and, thus, there was no apparent conflict between a limitation to performing only simple routine repetitive tasks and a position requiring the ability to understand and carry out detailed, but uninvolved, instructions.").

"Courts have also held that a GED reasoning level of 3 does not preclude the performance of [simple, routine, and repetitive tasks]." <u>Doll v. Saul</u>, 1:19-cv-85-MOC, 2019 WL 5866156, at * 4 (W.D.N.C. Nov. 8, 2019) (collecting cases).

However, even if an apparent conflict existed between a job requiring a Reasoning Level of 3 and Plaintiff's RFC limitation to "simple, routine repetitive tasks in a low stress and low production environment," the ALJ's failure to resolve such a conflict in this case would not require remand because the VE also identified other jobs that Plaintiff could perform and for which an apparent conflict did not exist. As discussed above, the occupations of laundry folder and inspector hand packager require a Reasoning Level of 2, which does not conflict with Plaintiff's RFC limitations. Additionally, the occupation of check weigher requires a Reasoning Level of 1. DICOT 737.687-026, 1991 WL 680047.

Since Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act." <u>Richardson</u>, 2019 WL 1354042, at * 4 (citing <u>Guiton v. Colvin</u>, 546 F. App'x 137, 142 (4th Cir. 2013); <u>see also</u> <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051, n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the VE constitute an insignificant number."); <u>Bavaro v. Astrue</u>, 413 F. App'x 382, 384 (2d Cir. 2011)) (finding that the Commissioner need show only one job to meet her burden at Step Five).

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 12) be granted and the Commissioner's Motion for Summary Judgment (Doc. 14) be denied.

Signed: July 2, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).